**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KORY D. KUNKLE,              )
                                        )
                 Plaintiff,       )
                                        )
                 v.            )      Civil Action No. 25-1683
                                        )      Judge Nora Barry Fischer
FRANK BISIGNANO,        )      Docket No. 8
Commissioner of Social Security,  )
                                        )
          Defendant.    )

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Kory D. Kunkle ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review and remand of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II and § 1614(a)(3)(A) of the Social Security Act (the "Act"). (Docket No. 3; Docket No. 8 at 1). Now pending before the Court is Plaintiff's request for relief, which has been fully briefed. (Docket Nos. 8-9).

**II.     PROCEDURAL HISTORY**

On October 24, 2022, Plaintiff filed an application for the aforesaid social security benefits, alleging disability as of July 23, 2022. *See* Administrative Transcript, Docket No. 5 (hereafter "Tr."); *id.* at 16-17, 223-227.[1] His application being denied by the Social Security Administration

---

[1] A certified copy of the transcript of the complete administrative proceedings was made of record at Docket No. 5 as follows: 5-1 Court Transcript Index; 5-2 pp. 1-65; 5-3 pp. 66-119; 5-4 pp. 120-222; 5-5 pp. 223-259; 5-6 pp. 260-353; 5-7 pp. 354-1076; and 5-8 pp. 1077-1128.

(the "SSA") at the May 8, 2023 initial and the December 4, 2023 reconsideration levels of review, it then proceeded to an online video hearing before Administrative Law Judge ("ALJ") Leslie Perry-Dowdell on August 21, 2024. During that hearing Plaintiff, who was represented by his present counsel, and a vocational expert, Kathleen A. Young, testified. On October 11, 2024, ALJ Perry-Dowdell issued a Decision finding that Plaintiff had not established disability under the Act during the relevant period (July 28, 2022 through the above-said date of her decision) and denying his application. (Tr. at 16-31).[2] The Appeals Council thereafter denied Plaintiff's request for review, rendering the ALJ's Decision final pursuant to 20 C.F.R. § 404.981. Plaintiff filed suit in this Court on October 29, 2025. (Docket No. 8 at 1-2 (providing citations of record); Docket No. 9 at 2-3 (same)); *see also* Tr. at 1-6, 14-65, 97-119, 127-37, 222-37, 275, 349-53. He specifically objects that the ALJ failed to (a) properly evaluate Plaintiff's evidence of his need to elevate his left foot and severe weight-bearing and postural limitations and (b) provide legally sufficient explanation for his failure to include said restrictions in his RFC. (Docket No. 8 at 9).

The issues at hand are whether (a) the correct legal standards were employed, and (b) substantial evidence exists in the record to support the ALJ's Decision. On deferential review and as more fully set forth below, the Court finds that the administrative record sufficiently supports the ALJ's Decision, and that the proceedings and determinations complied with the applicable standards. Plaintiff's request for remand is accordingly denied and judgment granted in favor of the SSA/Commissioner.

---

[2] The ALJ considered the July 27, 2022 related decision of ALJ Paul Kovac, finding the claimant not disabled under the Act. Finding none of the conditions for reopening that decision to be present, she proceeded to address the period beginning July 28, 2022. (Tr. at 18, citing 20 CFR § 404.988). Plaintiff's date last insured was determined to be December 31, 2024. (*Id.* at 19).

III.    **FACTUAL HISTORY**

Plaintiff suffered a work-related injury involving a fall from a trailer on March 19, 2019, sustaining injuries to his left foot/ankle and back, for which surgeries and physical therapy followed. Plaintiff's further relevant history, as set forth in his hearing testimony (Tr. at 38-66) and highlighted in Plaintiff's Brief in Support (Docket No. 8, providing citations to Transcript), includes the following:

Plaintiff worked as an over-the-road tractor trailer driver and was injured while working. His workers' compensation case was settled in approximately 2021, after he returned to work for less than six months. He has since had multiple surgical interventions, physical therapy and ongoing medical management. At the time of the hearing, he was wearing a "boot" in non-weight-bearing recovery from recent subtalar surgery. Plaintiff is able to shower, dress, make his own light meals, drive short distances, help put away groceries, can seasonal produce and make jam/jelly, help with laundry that does not require carrying on stairs, lift approximately seven pounds, and engage in limited care of his family's dogs and grandchildren. However, he uses a chairlift on stairs at home, descends public stairs sideways step-by-step, needs to frequently elevate his left leg (*e.g.*, after approximately 45 minutes sitting), and spends most of the waking-day sedentary due to lower left extremity pain and chronic swelling. He also attributes trouble walking to arthritis in his right hip and back. Although he has (partially pain-related) difficulty with memory, anxiety and concentration, he obtained a bachelor's degree in logistics from Colorado Technical University in February 2024. (Docket No. 8 at 3-6) (Tr. at 43-66).

IV.    **STANDARD OF REVIEW**

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in "substantial gainful activity" because of a medically determinable (physical or

mental) impairment (an "MDI") which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).  When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy.  *See e.g., Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  *See also* Tr. 18-20.

The Court's review of the agency's final decision is plenary for questions of law. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  It reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g));[3] *Burns v. Barnhart,* 312 F.3d

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil

113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983). This evidentiary threshold is not high, and "substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek,* 139 S. Ct. at 1154; *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the ALJ's decision is supported by such evidence, it is conclusive.[4] The Court may not "set aside" the decision "even if this Court 'would have decided the factual inquiry differently.'" *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).[5]

## V.    ANALYSIS

The 15-page Decision rendered by ALJ Perry-Dowdell found that Plaintiff (1) did not engage in substantial gainful activity during the relevant period; (2) had the severe impairments of "prior left calcaneus fracture and torn Achilles tendon, s/p left foot surgeries; left ankle subtalar degenerative joint disease; obesity; major depressive disorder; generalized anxiety disorder and

---

action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

[4] As the Supreme Court has explained, however, the ALJ must provide a satisfactorily clear articulation of the basis for her conclusions:

An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U. S. 414, 423, 141 S. Ct. 1150, 209 L. Ed. 2d 287 (2021). In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'" *FCC v. Fox Television Stations, Inc*., 556 U. S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009). But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

*Ohio v. EPA*, Nos. 23A349, 23A350, 23A351, 23A384, 2024 U.S. LEXIS 2846, at *18 (June 27, 2024); *see also Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

[5] As the Supreme Court reiterated in *Ohio v. EPA, supra*, when considering a case, a district court can neither conduct a *de novo* review of the decision nor re-weigh the evidence of record. It must judge, under the applicable standard, the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfe*l, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp*., 332 U.S. 194, 196–97 (1947).

ADHD";[6] (3) did not have an impairment or combination of impairments meeting or equaling the severity of one of the criteria listed;[7] and (4) had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) (for example, lifting up to 10 pounds occasionally; standing and walking for 2 hours; and sitting for up to 6 hours in an 8-hour workday with normal break) except: can never operate foot controls with the left foot; can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; all other "posturals" are occasional (balancing, stooping, kneeling, crouching and crawling); needs to avoid unprotective heights and/or working with moving mechanical parts; can occasionally operate a motor vehicle;  can occasionally work in extreme cold and heat;  will need the ability to alternate to sitting for 5 minutes after every 25 minutes of standing and walking while remaining on task; can understand, remember and carry out simple instructions; work-related decision-making will be occasional; the work will be in a stable work environment where the workplace and work process would remain generally the same from day to day; and there will be no performance of work demanding a specific production rate such as assembly line work or work requiring an hourly quota.

(Tr. at 22-23).  This determination precluded performance of his past relevant work.[8]

---

[6] The ALJ further found - on review and consideration of the medical evidence in Plaintiff's file - that he has the non-severe impairments of medically-managed GERD; mild right hip and lumbar degenerative changes; congenital fusion of the c-spine; migraine; hearing loss of the left ear with good speech discrimination; and mild neurocognitive disorder which did not prevent his completing a degree during the relevant period.  With regard to Plaintiff's mild right hip and lumbar degenerative changes, the ALJ specifically found that the imaging and other medical evidence showed only mild degenerative changes that would have no more than a minimal effect on his ability to work, and that no aggressive treatment was recommended or anticipated during the period under adjudication. (Tr. at 20).

[7] In making this finding, the ALJ considered the totality of the record and the four broad functional areas known as the "paragraph B", and "paragraph C" criteria, in detail.  (Tr. at 21-23); *id.* (finding mild limitations in (a) understanding, remembering or applying information, (b) interacting with others, and (c) adapting or managing oneself, and finding moderate limitations in regard to concentrating, persisting or maintaining pace).

[8] *See* Tr. at 23-29 (ALJ Perry-Dowdell's detailed explanation of the process and bases of her findings at step (4)). More particularly, in considering Plaintiff's claim, the ALJ identified the underlying MDIs as ones that could be both (a) "shown by medically acceptable clinical or laboratory diagnostic techniques" and (b) "reasonably expected to produce the claimant's pain or other symptoms." And in so doing, she considered both (a) Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical and other evidence, based on the requirements of 20 CFR § 404.1529 and SSR 16-3p, and (b) the medical opinion(s) and prior administrative medical finding(s), in accordance with the requirements of 20 CFR § 404.1520c.

The ALJ also considered, in completing her RFC assessment, the extent to which the "intensity, persistence, or functionally limiting effects" of Plaintiff's pain or other symptoms of those MDIs impacted his work-related activities and the extent to which Plaintiff's own statements about those effects were substantiated by objective medical and other evidence of the entire longitudinal record on the whole. (Tr. at 24-30).  *See also id.* at 24 (noting that whenever such statements are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities").

The ALJ then found, at step 5, that Plaintiff retained the capacity to perform other work existing in the national economy.  In particular, she found that at his age, with his level of education, and subject to the determined RFC, he could perform the requirements of representative occupations

---

ALJ Perry-Dowdell found that the evidence, taken in its entirety, did not fully support Plaintiff's assertions concerning the intensity, persistence and limiting effects of his symptoms.  For example, as to Plaintiff's mobility and positional limitations, and his need to frequently elevate his left leg, the ALJ expressly discussed the medical record evidence of Plaintiff's left calcaneus fracture and torn Achilles tendon and foot surgeries; degenerative joint disease of the ankle and subtalar joint; imaging during 2023 and 2024 showing scarring, subtalar and CCJ synovitis, and Achilles tendinous; and subtalar fusion surgery in July 2024. She also explicated the content of examinations in the record documenting limited range of motion; left ankle tenderness and swelling; left ankle crepitus; tenderness about the right greater trochanter; reduced strength; tingling along the sural nerve; diminished sensation in the left foot; abnormal deep tendon reflexes; inability to heel rise "due to pain"; difficulties heel and toe walking; limited squat; atrophy in the left leg "but improved"; positive FABER (right); and antalgic gait.  She noted that examinations also documented normal shoulder, elbow, wrist, knee, hip, c-spine and lumbar range of motion; intact sensation in the bilateral upper and lower extremities; 5/5 strength in the bilateral upper and lower extremities; no evident muscle atrophy; intact hand and finger dexterity; ability to rise from a chair without difficulty; negative facet loading and straight leg raising; and normal coordination and gait. She cited record indications that Plaintiff's treatments had included bracing, physical therapy, therapeutic injection(s) and medications - which resulted in "at least partial symptomatic improvement".  (Tr. at 24-26 with citations to record).

In considering medical opinion(s) and prior administrative medical finding(s), the ALJ correctly noted that she "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)".  (Tr. at 26). *See also* discussion *infra* at 11.  She reviewed in detail the findings of the May 2023 and November 2023 determinations of State agency medical consultants Margel Guie, D.O. and Arcadio Agudelo-Hernandez, M.D., respectively, that Plaintiff could perform light work, with additional limitations.  The ALJ noted that she found these persuasive as they were both consistent with and supported by the medical record.  In comparison, the November 2023 determination of consultative medical examiner, Kelsey Kumar, N.P., included a walking restriction which the ALJ found unpersuasive "in light of examinations documenting normal or only mildly antalgic gait".  (Tr. at 26-27 with citations to record).

The ALJ also discussed in detail the functional capacity evaluation obtained in August 2022, which (a) concluded that, at the time, Plaintiff  fell in the "part-time sedentary" physical demand category with limited reaching and postural limitations, and (b) recommended that Plaintiff  keep his foot elevated above heart level.  And she noted that although in December 2023 Plaintiff's surgeon, Victor Prisk, M.D., indicated (by check-the-line completion) that he agreed, she found this unpersuasive as neither the recommendation for elevation nor some broader restrictions in the evaluation were fully consistent with or supported by the record as a whole.   She further detailed that said restrictions/recommendation were in tension with, *e.g.*, both Dr. Prisk's own treatment records and Plaintiff's statements regarding his own activities.  (Tr. at 28-29 with citations to record).  Finally, the ALJ explained that she found unpersuasive as to Plaintiff's current work-related impairments:  (a) some work limitations given in the context of his earlier workers' compensation claim and, similarly, (b) Dr. Prisk's assessment of limitations and an RFC performed in 2021, *i.e.*, a period prior to that being adjudicated. (*Id.* at 28-30).

On the basis of this review, ALJ Perry-Dowdell concluded that "on the entire record, the undersigned finds that the claimant can do work subject to the above residual functional capacity at a level consistent with the regular and continuing performance of substantial gainful activity."  (*Id.* at 30).

such as certain clerking or weight testing positions.  Plaintiff's claim was therefore denied.  *See generally* Tr. at 24-32.

While not unsympathetic to Plaintiff's medical history, the Court must, under the applicable standard, reject Plaintiff's contentions of error and affirm the ALJ's Decision.  It does so on the basis of (a) its review and above explication of the Decision challenged, and (b) largely in agreement with the citations to substantial evidence in the Administrative Record and summation of the ALJ's findings presented by Defendant.  (Docket No. 9 at 6-10).  In further response to Plaintiff's averments of error, the Court observes that:

Plaintiff objects that the ALJ erred in failing to "provide a legally sufficient explanation for rejecting evidence" - *i.e.*, the "objective medical evidence" (including that of "positional limitation") and the "functional finding" evidence, as well as Plaintiff's testimony, "establishing [his] need to elevate his foot" (Docket No. 8 at 9-12).[9]  And Plaintiff concludes that the ALJ's failure to identify evidence sufficient to explain her failure to include "an elevation limitation" in the RFC was outcome-determinative because the vocational expert testified that said restriction would preclude Plaintiff's future employment in any job.  (Docket No. 8 at 12-13).

As detailed in Section III and the Decision, however, notwithstanding (a) the August 2022 RFC's recommendation that Plaintiff elevate his leg; (b) Dr. Prisk's one-line checkmark indication

---

[9] Although Plaintiff's Brief in Support styles his first objection as "Fail[ure] to Provide a Legally Sufficient Explanation for Rejecting Evidence Establishing Plaintiff's Need to Elevate His Foot" and his second objection as "Fail[ure] to Address Consistent Treating, Examining, and Functional Evidence Confirming Severe Weight-Bearing and Positional Limitations", the substance of these objections significantly overlaps, and they rely largely on the same assertions.  (Docket No. 8 at 9-11 and 11-12).

*See also id.* at 10 (noting that the RFC obtained in August 2022 "documented antalgic gait, restricted ankle motion, muscle weakness, and edema", "concluded Plaintiff could not tolerate prolonged standing or walking and could sustain no more than part-time work capacity", and  recommended "keeping the foot elevated above the level of the heart to manage chronic left lower edema for 20 minutes every 2 hours"); *id.* (further noting that "treating and examining providers consistently documented similar limitations, including inability to ambulate normally, restricted weight-bearing tolerance",  Dr. Prisk "approved and agreed with" the FCE, and "Plaintiff's testimony further confirmed the functional impact of his condition, [as he] testified that his foot swells and that he must lie down and elevate it above heart level to reduce swelling and pain" after "sit[ting] for approximately forty-five minutes").

- in response to Plaintiff's counsel's letter regarding the claim for disability benefits – that he agreed with the RFC report in general;[10] and (c) Plaintiff's documented but limited and subjective reporting and hearing testimony as to his need of frequent left foot/leg elevation and other work-related impairments, the ALJ found the recommendation and attestations to lack persuasive support in the Administrative Record as a whole.

The regulations' two-step process requires: *first*, (a) objective clinical signs and laboratory findings demonstrating the existence of an MDI that (b) could reasonably be expected to produce the alleged symptoms, and then *second*, as to that MDI, the extent to which the claimant's statements of work-related impairment are medically supported. *See supra;* 20 C.F.R. §§ 404.1529(a, b), 416.929(a, b). Here, the ALJ appropriately considered the medical records presented and reached her conclusions in accordance with the regulatory guidelines.

As referenced above, the assessment of an MDI and the substantiation of Plaintiff's statements regarding attributed symptoms are delegated to the ALJ, subject to the Court's deferential review. *See* Section IV, *supra*. *See also Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2004) (noting that there is no requirement that an ALJ discuss every piece of evidence in the record so long as her decision, read as a whole, illustrates that she considered the appropriate factors and her determination was supported by substantial evidence in the record) (citing *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001)).

---

[10] Tr. at 1028-1035 (December 20, 23 letter from Plaintiff's counsel to Dr. Prisk, requesting that he check one of two line items in the body of the letter, indicating that he did or did not agree with the attached August 25, 2022 FCR). The Court notes that the space available for "additional comments" was left blank. *See Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks ... are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be.").

Although Plaintiff objects to ALJ Perry-Dowdell's asserted failure to sufficiently/properly consider certain of his medical records and the August 2022 RFC, the Decision reflects their consideration – in context encompassing their "consistency" and "supportability", and with substantial reference to the record - in the course of her determination of Plaintiff's RFC and qualification for benefits. *See supra*; Tr. at 24-32. *Cf., e.g., Zaborowski v. Comm'r of Soc. Sec.*, 115 F. 4th 637, 639 (3d Cir. 2024) (ALJ sufficiently supported her findings by "weav[ing] supportability and consistency through her analysis").

The Decision found that Plaintiff's subjective statements/testimony concerning the "intensity, persistence and limiting effects" of symptoms were "not entirely consistent with the medical evidence and other evidence" of record, as explained therein;[11] and the ALJ incorporated related functional limitations, accommodative to the medically supported work-related impairments thus assessed, in the RFC assessment. *See supra* (summarizing Decision analysis and findings). *See also* Docket No. 9 at 7.

The RFC need only include "credibly established" limitations. *See* Docket No. 9; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) ("where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation" in the RFC).[12]

---

[11] Tr. at 30.

[12] Similarly, the ALJ is required to submit to the impartial vocational expert only those functional limitations that she finds credibly established by the record. *See, e.g., Hammond v. O'Malley*, 735 F.Supp.3d 567, 579 (E.D. Pa. 2024) (ALJ is not required to submit to vocational expert every impairment alleged by claimant, but must accurately convey all of claimant's credibly established limitations); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

10

Moreover, under the updated medical evidence regulations (applicable to claims filed after March 27, 2017), an ALJ considers the persuasiveness of the opinions and prior administrative medical findings instead of assigning them weight, as was required under the previous regulations. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[13]  Under the revised regulations, an ALJ cannot defer or give any specific evidentiary weight to a medical opinion (or prior administrative medical finding); rather, she assesses how persuasive the opinion or finding is by considering non-exclusive factors (supportability, consistency, relationship with the claimant, specialization, and a catch-all "other" that includes, *e.g.*, familiarity with other evidence in the claims folder and with the disability program).  The most important factors are supportability and consistency; the ALJ explains how she considered these, but generally need not discuss other factors.  20 C.F.R. § 404.1520c(a) and (b). [14] More generally, and as noted *supra*, the Court reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  *Cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision.").

## VI.    CONCLUSION

In sum, the Court has applied the applicable standard and finds that the ALJ's Decision (a) sufficiently included, considered and referenced the evidence relating to Plaintiff's subjective statements/testimony, symptoms, medical conditions, and limitations during the relevant period,

---

[13] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)).

[14] The new regulations were designed to be consistent with a "reasonable articulation standard" that does not require written analysis about how the adjudicator considered each piece of evidence. *See* 82 Fed. Reg. 5844-01, at 5858. The decision should allow a reviewing court "to trace the path of the adjudicator's reasoning." *Id.; see also Alaska Dep't of Envt'l Conservation v. E.P.A*., 540 U.S. 461, 497 (2004); Section IV, *supra*.

11

(b) sufficiently explained the ALJ's reasonings and findings to permit the Court's meaningful review, (c) included related reasonably demonstrated limitations during the period at issue in its RFC, and (d) based its denial of benefits on substantial evidence found and reasonable determinations made. *See* Sections IV and V, *supra*. Plaintiff's Motion for Summary Judgment [8] is therefore denied and the decision of the SSA/Commissioner is affirmed. An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: June 11, 2026
 cc/ecf: All counsel of record.